DALE CARPENTER, Respondent, *v.* BENJAMIN F. WITBECK, Appellant.

Third Department, March 4, 1925.

Corporations — liability of officers — action against treasurer who was not stockholder or director based on alleged negligence, fraud and conspiracy in issuing interim receipt for corporation note — interim receipt was purchased by plaintiff from stockbroker — receipt provided for exchange for note " when as and if issued " on delivery of receipt at office of corporation — receipt contains no misstatement — later note issue was intended to take place of issue against which receipt was given — later issue was dated two weeks later than contemplated issue was to have been dated — negligence or fraud cannot be predicated on language of receipt — plaintiff had right to receive note from later issue or to receive face value of receipt — evidence does not show that notes and interim receipts were unauthorized — defendant did not violate Stock Corporation Law of 1909, § 35 (now Stock Corporation Law of 1923, § 61) when he signed and delivered receipt — liability under said section is in favor of creditor only.

In an action against the treasurer of a stock corporation, who was neither a stockholder nor a director, to recover damages based on the alleged negligence, fraud and conspiracy of the defendant in the issuance of an interim receipt to be exchanged for a corporation note, the contention of the plaintiff, who purchased the receipt from a stockbroker, who had purchased the whole issue, several months after it was issued that the receipt represented that the note issue had been authorized and the notes would be issued, cannot be sustained, since it appears that the interim receipt dated February 15, 1922, certified that the bearer was entitled to receive $1,000 face value of the two-year gold notes of the corporation " when, as and if issued by said Corporation and received * * * on the surrender hereof at the office of the Corporation," and further stated that " The said notes if issued are to be a part of an authorized issue of

$100,000," for while the receipt implies that the notes had been authorized, it also very clearly states that the corporation might or might not issue them at its option, and so when the plaintiff purchased the receipt he was plainly informed by it that the corporation might or might not complete the transaction by exchanging a permanent note for his receipt, and any misstatement, if such there was, was not misleading and was quite immaterial.

No negligence or fraud on the part of the defendant can be predicated on the language of the interim receipt purchased by the plaintiff based on any alleged failure to issue corporation notes, since it appears that while the original $100,000 issue was not actually issued, another issue of $150,000 was authorized and issued in the place and stead of the original issue, and that the notes under the subsequent issue, though dated two weeks later than that contemplated by the original issue, bore the same rate of interest and were exchanged for interim receipts given against the original issue.

The receipt required the plaintiff to surrender it at the office of the corporation in order to receive a note, and if he had done so, he might have received a two-year note of the corporation under the substituted issue, which would have been as valuable as the one for which he bargained, or, if he objected to the change in date, the corporation was obligated to return the money he paid for the receipt, which obligation it did not repudiate, for the plaintiff never presented his interim receipt at the office of the corporation as he was required to do by his contract.

The finding by the trial court that the contemplated issue of $100,000 in gold notes and the interim receipts therefor, one of which the plaintiff purchased, were unauthorized by the corporation, is not supported by the fact that the minute book of the corporation contains no minutes of a meeting authorizing the issuance of the notes or the interim receipts, for it was clearly shown that the minute book was incomplete and there was no evidence other than the minute book to show that the notes and interim receipts were unauthorized.

Since it appears from the evidence that the interim receipt purchased by the plaintiff, considered as a certificate, was not " false in any material representation " the defendant did not, by signing and delivering it, violate section 35 of the Stock Corporation Law of 1909 (now section 61 of the Stock Corporation Law of 1923) and become liable to the plaintiff for the amount of the certificate. Furthermore, the plaintiff's claim that the defendant is liable under said section of the statute cannot be sustained, for the statute gives a remedy to a creditor or stockholder only of the corporation, and the sole contention of the plaintiff in this case is that what he purchased was unauthorized by the corporation, and if he is right about that, he never became a creditor or stockholder within the meaning of that section.

APPEAL by the defendant, Benjamin F. Witbeck, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 2d day of September, 1924, upon the decision of the court rendered at the Albany Trial Term before the court without a jury.

*George J. Hatt, 2d,* for the appellant.

*J. S. Carter,* for the respondent.

COCHRANE, P. J.:

Defendant was the treasurer but not a director or stockholder of the Robert H. Reid Pulp and Lumber Corporation. About

February 15, 1922, Robert H. Reid, the president and owner of 496 of the 500 shares of the stock of the corporation, and one Bell, a stock and bond broker, informed defendant that the corporation had authorized $100,000 of notes to be issued which notes were to be dated February 15, 1922, and to be payable in two years and to bear interest at seven and one-half per cent per annum and that said Bell had agreed to purchase said notes from the corporation and that he would have temporary certificates or interim receipts prepared for use until the permanent notes should be printed. A few days thereafter said Bell presented to defendant such interim receipts apparently in the denomination of $1,000 each and defendant pursuant to his conversation with said Reid and Bell signed the same and delivered them to said Bell. In the following August plaintiff purchased one of said interim receipts from said Bell a copy thereof being as follows:

" No. 9                   INTERIM RECEIPT                $1000.00
      " Robert H. Reid Pulp & Lumber Corporation
                " Two-Year Gold Notes.
" Dated February 15, 1922.
      " This is to certify that the bearer is entitled to receive ONE THOUSAND DOLLARS face value Robert H. Reid Pulp and Lumber Corporation, two-year Gold Notes, when, as and if issued by said Corporation and received by the undersigned on the surrender hereof at the office of the Corporation, Albany, N. Y.
      " The said notes if issued are to be a part of an authorized issue of $100,000 face value, a direct obligation of said Corporation, February 15, 1922.
      " Said notes are to bear interest from February 15, 1922, at the rate of $7\frac{1}{2}\%$ per annum, payable semi-annual.
" ROBERT H. REID PULP & LUMBER CORPORATION.
                              " B. F. WITBECK,
                                      " *Treasurer.*"

The permanent notes were not issued by the corporation but were supplanted by another issue of $150,000 as hereafter stated. The said corporation was declared bankrupt March 16, 1923. About the same time Bell died. The plaintiff thereafter not having received a permanent note corresponding to his interim receipt brought this action charging the defendant with negligence, fraud and conspiracy in collusion with said Bell. The trial justice has rejected the charges of actual fraud and conspiracy but has held the defendant liable for constructive fraud and for negligence in creating an opportunity for the plaintiff to purchase said interim receipt. This alleged liability is based largely on the claim that the

interim receipt represents that the $100,000 issue of permanent notes had been authorized and would be issued. The plaintiff misreads this receipt. It implies that the notes had been authorized as of February 15, 1922, but it perhaps even more clearly and beyond any question implies that the corporation may or may not at its option issue said notes. The receipt entitles the holder to $1,000 of notes " when, as and if issued by said Corporation " and further provides that said notes *if issued* are to be a part of an authorized issue of $100,000. To authorize the notes was one thing; to issue them was another. When plaintiff purchased his interim receipt he was plainly informed by the precise terms thereof that the corporation might or might not complete the transaction by exchanging a permanent note for his receipt. He was led to believe that the notes had been authorized and he was at the same time informed by the language of the receipt that they might not be issued. Any misstatement, if such there was, was not misleading. It was quite immaterial. We need not further discuss this feature of the case for the trial court has expressly found " that plaintiff was not deceived by any representation contained in said interim receipt." Now let us see what subsequently occurred. It is best described in findings of the court as follows: " That almost immediately after defendant signed said interim receipts he had a further talk with said Reid and said Bell, both of whom told him that they had decided that the $100,000 would not be sufficient for the purposes of the corporation and that accordingly it had been decided to increase the issue of notes to $150,000. That thereafter said Robert H. Reid Pulp and Lumber Corporation issued its notes of an aggregate par value of $150,000 dated March 1, 1922, payable March 1, 1924, bearing interest at the rate of $7\frac{1}{2}\%$ per annum." And the court has made this further finding: " That said $150,000 issue was intended to and did take the place of the contemplated issue of $100,000 referred to in the interim receipt in suit." In the following August the said corporation issued interim receipts covering a further note issue of $200,000 dated August 1, 1922, payable two years thereafter and bearing interest at the rate of seven and one-half per cent per annum. The said Bell purchased from the corporation both of said issues of $150,000 and $200,000 and in turn sold such securities to his various clients and customers. There is no evidence that the $100,000 of interim receipts, one of which the plaintiff purchased and which were signed and delivered to Bell by the defendant, were duplicated when the $150,000 note issue of March 1, 1922, was authorized, nor that any interim receipts were issued against said last-mentioned note issue. It does appear,

however, that interim receipts were issued covering the $200,000 of notes authorized in the following August. From the foregoing facts it seems clear that no negligence or fraud of the defendant can be predicated on the language of the interim receipt purchased by plaintiff. That receipt required him to surrender it at the office of the corporation in the city of Albany. Had he done so he might have received a two-year note of the corporation payable March 1, 1924, with interest at seven and one-half per cent per annum, which would have been as valuable as the one for which he bargained. He might have objected had he so willed to receiving such a note because it matured two weeks later than the one for which he had bargained but in that event he could have received the face value of his interim receipt. That unquestionably was a valid obligation against the corporation. The exercise by the latter of its right as expressed in the receipt not to issue an equivalent permanent note carried with it the clear and undisputable duty to pay the holder of the certificate the amount thereby represented. The corporation has not repudiated that duty. Plaintiff never presented his interim receipt at the office of the corporation as by his contract he was required to do. His dealings were solely with Bell and Bell was not the agent of the corporation. He was the purchaser of the two issues of notes and when he sold them he was selling his own property and when plaintiff purchased his receipt he purchased it of Bell and not of the corporation. Bell was not authorized to exchange interim receipts for permanent notes. That exchange was to be made at the office of the corporation.

One other phase of the case requires consideration. The trial court has found that the contemplated issue of $100,000 notes and the interim receipts, one of which the plaintiff purchased, were unauthorized by the corporation. These findings are not fairly supported by the evidence. Plaintiff produced a minute book of the corporation which book fails to show any minutes authorizing the issue of such notes or interim receipts but such book is shown to be incomplete. It discloses no meeting of the directors or stockholders of the corporation between October 3, 1921, and November 27, 1922. But it is established and found by the court that in March and August of 1922 the two note issues of $150,000 and $200,000 were respectively authorized. The accuracy and completeness of this minute book are thus successfully challenged. There is no other evidence tending to show that the notes and interim receipts were unauthorized. The charges against the defendant have not been sustained and so far as appears plaintiff holds a valid obligation against the corporation.

It was found by the trial court that when defendant signed and delivered plaintiff's interim receipts he violated what was then section 35 (now section 61) of the Stock Corporation Law and because of such violation became liable to the plaintiff for the amount of the certificate. From the foregoing discussion it follows that said interim receipt considered as a certificate was not " false in any material representation " and that defendant did not, therefore, fall within the condemnation of the statute. There is another answer to this claim of statutory liability. The statute gives a remedy only to " a creditor or stockholder of the corporation." The contention of the plaintiff is that what he purchased was unauthorized by the corporation and if he is right about that he never became " a creditor or stockholder." His grievance is that he did not become a creditor. No statutory liability, therefore, arises. Whatever remedy plaintiff may have is given him by the common law and if he recovers it must be on common-law principles. On the record before us he has failed to establish any right to recover.

The judgment should be reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event.

All concur.

Judgment reversed on the law and facts and new trial granted, with costs to the appellant to abide the event. The court disapproves of the following findings of fact in the decision: 10, 11, 12, 13, 20, 21, 22, 23, 24, 27; and all the conclusions of law except 7 and 11.